[Cite as *Gilbert v. Midland Funding, L.L.C.*, 2019-Ohio-5295.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

CAITLIN GILBERT,

    PLAINTIFF-APPELLEE,            CASE NO. 5-19-11

    v.

MIDLAND FUNDING LLC ET AL.,

                                          O P I N I O N

    DEFENDANTS-APPELLANTS.

---

Appeal from Hancock County Common Pleas Court
Trial Court No. 2015-CV-94

Judgment Reversed and Cause Remanded

Date of Decision: December 23, 2019

---

APPEARANCES:

    *H. Toby Schisler* for Appellants

    *Ronald I. Frederick and Gregory S. Reichenbach* for Appellee

**PRESTON, J.**

{¶1} Defendants-appellants, Midland Funding LLC ("Midland"), Midland Credit Management, Inc. ("Midland Credit"), and Encore Capital Group, Inc. ("Encore") (collectively "the Midland parties"), appeal the March 12, 2019 order of the Hancock County Court of Common Pleas granting plaintiff-appellee, Caitlin Gilbert's ("Gilbert"), motion for class certification. For the reasons that follow, we reverse.

{¶2} The protracted history of this case begins on February 16, 2011, with a complaint filed by Midland against Gilbert in the Findlay Municipal Court. (*See* Doc. No. 1, Plaintiff's Ex. 1). In that case, Midland asserted that Gilbert had defaulted on an obligation to repay $1,443.29—a debt Gilbert allegedly incurred using a credit card issued by HSBC Bank Nevada, N.A. ("HSBC"). (*Id.*). Midland claimed that it had purchased Gilbert's allegedly delinquent account from HSBC and that Gilbert had failed to make any payment toward satisfaction of the outstanding debt despite Midland's demand that she do so. (*Id.*). Although Midland apparently obtained proper service on Gilbert in May 2011, Gilbert failed to plead or otherwise defend against Midland's action. (Doc. No. 1, Plaintiff's Ex. 4). As a result, Midland filed a motion for default judgment, which the Findlay Municipal Court granted on July 6, 2011. (*Id.*). Gilbert did not appeal the Findlay Municipal Court's entry of default judgment, and she did not seek (and has not sought) to have

the default judgment set aside by the Findlay Municipal Court. Gilbert eventually paid the sum due under the default judgment, though it is unclear whether she did so voluntarily or under threat of garnishment. (Doc. Nos. 1, 19).

{¶3} On March 19, 2015, Gilbert filed a complaint against the Midland parties in the Hancock County Court of Common Pleas.[1] (Doc. No. 1). In her complaint, Gilbert averred that she was a resident of Montgomery County, Ohio, rather than Hancock County, Ohio, when Midland filed suit against her in the Findlay Municipal Court. (*Id.*). She further claimed that she "did not sign any written contract for the Alleged Debt in Hancock County." (*Id.*). Gilbert alleged that the Findlay Municipal Court therefore did not have jurisdiction to enter default judgment against her and that the default judgment entered against her is consequently void. (*Id.*). She contended that the Midland parties are not entitled to retain the money she paid to them in satisfaction of the default judgment. (*See id.*).

{¶4} Gilbert asserted that the lawsuit filed against her in the Findlay Municipal Court was but one of a number of similar suits filed by the Midland parties. She alleged that the Midland parties "regularly file[] collection actions against Ohio residents in [county or municipal court jurisdictions] where the

---

[1] Although Midland was the only plaintiff named in the complaint filed against Gilbert in the Findlay Municipal Court, Gilbert alleges that Midland, Midland Credit, and Encore "operate as a de facto single business interest, and jointly plan all significant operations and business activities, including but not limited to, debt collection and litigation of collection lawsuits in Ohio * * *." (Doc. No. 1). The Midland parties have vigorously disputed this assertion throughout the proceedings. (*See* Appellants' Brief at 1).

defendant does not live and did not sign a contract," thus resulting "in numerous void judgments being entered against class members in courts with no subject matter jurisdiction." (*Id.*). Gilbert claimed that the Midland parties' actions caused the "incorrect reporting of void judgments on class members' credit reports" and led to "class members' wages, bank accounts, and other valuable property being garnished and executed upon pursuant to void judgments, and payments by class members." (*Id.*). Accordingly, Gilbert sought to represent two classes of plaintiffs: the "Unjust Enrichment Class" and the "Collection Suit Defense Class."[2] (*Id.*). Gilbert requested that the trial court grant declaratory relief and a class-wide injunction prohibiting the Midland parties from (1) filing suit and obtaining judgments against class members in Ohio county and municipal court jurisdictions where class members do not reside and did not sign the contracts underlying their alleged debts and (2) executing on said judgments. (*Id.*). Gilbert also demanded (1) "[a]n order directing [the Midland parties] to cause judgments against class members to be vacated in the courts where the judgments were obtained, to cause certificates of judgment to be vacated in any courts in which they were filed, and to cause class members' credit reports to be corrected"; (2) "[a]ctual damages, including but not limited to, all amounts collected by [the Midland parties] on the debts of class

---

[2] The definitions of the two classes changed between the filing of Gilbert's complaint and the trial court's certification of the two classes. (*See* Doc. Nos. 1, 48, 50). To avoid confusion, we will introduce only the definitions of the two classes as actually certified by the trial court.

members"; and (3) "[d]isgorgement and restitution, including but not limited to, all money garnished by [the Midland parties] on [their] judgments or otherwise obtained by executing on void judgments." (*Id.*).

{¶5} On March 19, 2015, the same day that Gilbert filed her complaint, Gilbert filed a motion to consolidate her case with case number 2013-CV-459, *Midland Funding LLC v. Cassandra Colvin* ("*Colvin*"). (Doc. No. 11). On April 21, 2015, the Midland parties filed their answer to Gilbert's complaint. (Doc. No. 19). On May 21, 2015, the trial court ordered that Gilbert's case be consolidated with *Colvin* for purposes of discovery. (Doc. No. 26).

{¶6} On July 31, 2018, Gilbert filed a motion for class certification. (Doc. No. 43). On August 21, 2018, the Midland parties filed their memorandum in opposition to Gilbert's motion for class certification. (Doc. No. 44). In addition to arguing that Gilbert could not satisfy the requirements of Civ.R. 23, the Midland parties contended that the Supreme Court of Ohio's decision in *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, bars the trial court from even considering Gilbert's claims. (*Id.*). The Midland parties argued that *Lingo* precludes the trial court from entertaining Gilbert's claims because "the effect of the relief sought by Gilbert would require [the trial court] to make a determination that judgments entered by municipal [and county] courts against putative class members are void because those courts allegedly lacked jurisdiction to enter those judgments," and the

trial court, as a court of common pleas, does not have jurisdiction to effectively vacate, as void, the judgments of municipal and county courts. (*Id.*).

{¶7} On August 27, 2018, Gilbert filed her reply to the Midland parties' memorandum in opposition to her motion for class certification. (Doc. No. 45). On December 3, 2018, the Midland parties filed their supplemental memorandum in opposition to Gilbert's motion for class certification. (Doc. No. 49).

{¶8} On March 12, 2019, the trial court granted Gilbert's motion for class certification. (Doc. No. 50). First, the trial court concluded that the Supreme Court of Ohio's decision in *Lingo* does not prohibit it from considering Gilbert's claims. (*Id.*). The trial court noted that while Gilbert's claims "require[] [the] Court to determine whether a judgment is void, it does not require [the] Court to actually declare the judgment void." (*Id.*). It observed that "[t]he distinction is fine, but critical," and it concluded that "[e]quity would authorize [it to] require [the Midland parties] to pay for any proven damages that have arisen from collection actions taken pursuant to void judgments or to cease collection actions against the same." (*Id.*).

{¶9} The trial court then found that Gilbert met all seven requirements of Civ.R. 23 with respect to both of her proposed classes and certified the classes. (*Id.*). The first class, the "Collection Suit Defense Class," is defined as:

> [A]ll individuals who have been sued in Ohio by [the Midland parties]
> at any time through the present:

a. where [the Midland parties were] awarded a judgment or where the suit has not been dismissed;

b. where the lawsuit was filed in a county or municipal court jurisdiction where the defendant did not reside at the time of the filing and did not sign the underlying contract while a resident of that county or municipal and/or county [court] jurisdiction; and

c. where the lawsuit was filed in a municipal or county court and not in a court of common pleas; and

d. where the lawsuit was filed in a county or municipal court jurisdiction, where that jurisdiction was not a location where payment was required to be made.

(*Id.*).  The definition of the second class, the "Unjust Enrichment Class," is identical to the definition of the "Collection Suit Defense Class" except that the "Unjust Enrichment Class" includes only "individuals who have been sued in Ohio by Midland from March 18, 2009 to the present."[3]  (*Id.*).

{¶10} On April 5, 2019, the Midland parties filed a notice of appeal.  (Doc. No. 52).  The Midland parties raise three assignments of error for our review.

---

[3] Gilbert limited membership in the "Unjust Enrichment Class" to those persons sued by the Midland parties in the six-year period preceding the date of the filing of her complaint in order to account for "Ohio's 6-year statute of limitation for unjust enrichment claims * * *."  (Doc. No. 48).  *See Pomeroy v. Schwartz*, 8th Dist. Cuyahoga No. 99638, 2013-Ohio-4920, ¶ 41 ("An unjust enrichment claim is subject to a six-year statute of limitations."), citing *Thomas v. Kramer*, 194 Ohio App.3d 70, 2011-Ohio-1812, ¶ 45 (8th Dist.), citing R.C. 2305.07.  Gilbert did not impose any such temporal limitation on the "Collection Suit Defense Class" because "jurisdiction is never waived."  (Doc. No. 48).

**Assignment of Error No. I**

**The trial court erred by misinterpreting the Supreme Court of Ohio's decision in *Lingo* and concluding it had jurisdiction to certify a class that would require the court to determine judgments issued by other courts are void.**

{¶11} In their first assignment of error, the Midland parties argue that the trial court erred by granting Gilbert's motion for class certification because the trial court does not have jurisdiction to consider Gilbert's action. In this assignment of error, the Midland parties renew their argument that the Supreme Court of Ohio's decision in *Lingo* prohibits the trial court from adjudicating Gilbert's action. In response, Gilbert contends that *Lingo* does not bar trial courts from entertaining permissible collateral attacks on the judgments of other courts. She maintains that the trial court may properly consider her action because her action is a permissible collateral attack on a judgment of the Findlay Municipal Court as well as on the judgments of numerous other county and municipal courts.

{¶12} Before examining *Lingo* and applying it to the facts of this case, we believe that it is essential that we clearly frame the issues involved in the Midland parties' first assignment of error. In evaluating the Midland parties' first assignment of error, we do not touch on the trial court's decision to certify Gilbert's proposed classes, and we do not determine whether the claims alleged in Gilbert's complaint may properly be brought as a class action. Instead, we focus solely on Gilbert's individual claims against the Midland parties and the nature of these claims. Our

reasons for doing so are simple: if the trial court lacks jurisdiction to entertain Gilbert's individual claims then the trial court necessarily lacks jurisdiction to consider the claims of a class of persons with claims that are nearly identical to Gilbert's.

{¶13} Gilbert claims that the default judgment entered against her in the Findlay Municipal Court is void for lack of subject-matter jurisdiction and that because the judgment is void, it would be inequitable to permit the Midland parties to retain the money she paid to them to satisfy the void judgment. She thus seeks a declaration from the Hancock County Court of Common Pleas that the judgment of the Findlay Municipal Court is void for lack of subject-matter jurisdiction, an order directing the Midland parties to repay the money she paid to them in satisfaction of the void judgment, an order directing the Midland parties to cause the default judgment against her in the Findlay Municipal Court to be vacated, and other related relief, including actual damages and the correction of her credit report. The issue is whether, in light of *Lingo*, the trial court has the authority to review the judgment of the Findlay Municipal Court in the manner requested by Gilbert and to provide her with the relief she requests.

{¶14} *Lingo* arose, in part, from William Glick's citation for weaving and for operating a motor vehicle under the influence of alcohol. 138 Ohio St.3d 427, 2014-Ohio-1052, at ¶ 4. Under the terms of a plea agreement, Glick pleaded guilty to

reckless operation in the Berea Municipal Court. *Id.* at ¶ 4-5. In exchange, the weaving charge was dismissed at Glick's cost. *Id.* at ¶ 5. At the time, the Berea Municipal Court utilized software that was "programmed to assess state costs once per case and municipal and general court costs once per offense charged." *Id.* at ¶ 6. As a result, Glick was ordered to pay $427 in costs related to his reckless-operation conviction and $83 in costs related to the dismissed weaving charge. *Id.* at ¶ 7. Glick immediately paid the costs in cash, and although he "was puzzled that he had been made to pay court costs for the dismissed weaving charge," he did not appeal his conviction or sentence. *Id.*

{¶15} Two months later, Glick and two other individuals[4] filed a class-action lawsuit in the Cuyahoga County Court of Common Pleas, naming the state of Ohio as the sole defendant. *Id.* at ¶ 8. The complaint alleged that the plaintiffs had paid court costs associated with traffic offenses in a number of Ohio municipal courts and that these municipal courts had assessed such costs against the plaintiffs for each offense instead of once per case, in violation of Ohio law. *Id.* The plaintiffs "purported to bring the complaint on behalf of all persons who had paid improperly calculated court costs in any Ohio municipal, county, or mayor's court ('statutory courts') during the ten years prior to the filing of the complaint." *Id.* at ¶ 9. Glick and the other plaintiffs requested "a declaration that court costs may be assessed

---

[4] One of these individuals, Michael Lingo, lends his name to the case.

only once per case rather than once per charge, that the statutory courts had subjected the plaintiffs and members of the class to illegal assessments of costs, and that the class had a right to receive a full refund of those costs." *Id.* at ¶ 10. They further requested that the Cuyahoga County Court of Common Pleas "permanently enjoin the state from allowing any statutory court to collect court costs per offense in any case" and "order the state to disgorge all illegally assessed costs." *Id.*

{¶16} A year after filing their original complaint, the plaintiffs filed an amended complaint adding the Clerk of the Berea Municipal Court and other parties as defendants. *Id.* at ¶ 12. The parties then engaged in extensive motion practice, including competing motions for summary judgment and multiple motions for class certification. *Id.* at ¶ 14-23. Eventually, the Cuyahoga County Court of Common Pleas issued an "omnibus decision" that, in relevant part, "modified the plaintiffs' * * * motion for class certification in order to identify Glick as the sole class representative and to redefine the class as limited to individuals who paid improperly charged costs to the Berea Municipal Court" and "certified the class action as modified." *Id.* at ¶ 24. After these rulings, the class represented by Glick and the Clerk of the Berea Municipal Court were the only remaining parties to the action. *Id.* at ¶ 24-27.

{¶17} The court of common pleas treated the action "as one involving the unlawful assessment and collection of funds by the clerk of courts under the clerk's

own authority, acting as an administrative officer" and "compared the * * * action to previous equitable claims for restitution of improperly collected funds by administrative agencies * * *." *Lingo*, 138 Ohio St.3d 427, 2014-Ohio-1052, at ¶ 25. *See Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28; *Judy v. Ohio Bur. of Motor Vehicles*, 100 Ohio St.3d 122, 2003-Ohio-5277. The court rejected the Berea Municipal Court Clerk's argument that Glick was "'essentially appealing' a municipal court judgment," and after finding that it had jurisdiction to consider Glick's action, it concluded that the Clerk was improperly assessing costs on his own authority. *Lingo* at ¶ 25. The court further held that "'to the extent the Berea Municipal Court acted outside its jurisdiction in imposing costs, the order of costs was made without subject matter jurisdiction and is void *ab initio*.'" *Id.* Accordingly, the court of common pleas determined that Glick's claim was not barred by res judicata because "a void judgment can be challenged at any time." *Id.*

{¶18} The court of common pleas "declared that a portion of the costs that [the Clerk] had assessed against Glick violated [Ohio law] and that it had the authority to order the return of funds that were improperly collected by a governmental entity." *Id.* at ¶ 27. The court thus ordered the Clerk of the Berea Municipal Court to return $85 of the costs he had improperly collected from Glick. *Id.* Finally, finding that it would "be an inefficient use of court resources to require

defendants to file appeals in each case that the Berea Municipal Court charges costs improperly and that the improper costs were not included in final sentencing entries," the court enjoined the Berea Municipal Court Clerk from assessing costs in violation of Ohio law. *Id.* at ¶ 28.

{¶19} On appeal, the Eighth District Court of Appeals concluded that "the unlawful assessment of costs presents a voidable, rather than a void, act" and that because Glick and the other plaintiffs paid the disputed costs and never pursued appeals, "their claims were defeated by the doctrines of res judicata and mootness." *Id.* at ¶ 30. The Eighth District thus held that the action "did not involve a live controversy, and without a controversy, the court of common pleas had no subject-matter jurisdiction and, ultimately, no authority to certify the class action." *Id.* The Supreme Court of Ohio granted review of the Eighth District's decision to determine "whether a class action may be maintained in a common pleas court seeking declaratory and equitable relief related to unappealed municipal court sentences alleged to be void for imposing unlawfully excessive court costs." *Id.* at ¶ 1.

{¶20} The Supreme Court began its review by clarifying the nature of Glick's action. *Lingo*, 138 Ohio St.3d 427, 2014-Ohio-1052, at ¶ 33-39. The court observed that although Glick "implied that his injury arose from an administrative act and could only be resolved through equitable remedies," namely disgorgement of the money he paid to satisfy the allegedly illegal court costs, that was not the

case. *Id.* at ¶ 36. The court suggested that it was the Berea Municipal Court, not the Clerk of the court, that imposed the allegedly illegal costs as part of Glick's sentence. *Id.* at ¶ 6, 34, 39. The court concluded that "[b]y asserting error in the imposition of costs, Glick was attacking a portion of his sentence" and that "by requesting the return of a portion of the costs that he had paid to satisfy the municipal court's judgment, Glick was seeking a partial vacatur of the judgment." *Id.* at ¶ 37. Therefore, the relief Glick requested was possible "only if the common pleas court vacate[d] some portion of the municipal court judgment pursuant to a review of its validity, i.e., only if the court exercise[d] powers reserved exclusively for an appellate court." *Id.* at ¶ 36.

{¶21} After clarifying the nature of Glick's action, the Supreme Court then determined that the "court of common pleas did not have the authority to grant the relief requested in Glick's class-action lawsuit." *Id.* at ¶ 41. Specifically, the court held that the court of common pleas did not have the authority to grant Glick's request for declaratory judgment. The court observed:

> [I]t is well settled that declaratory judgment is not a proper vehicle for determining whether rights that were previously adjudicated were properly adjudicated. For direct and collateral attacks alike, declaratory judgment is simply not a part of the criminal appellate or postconviction review process. Ohio's Criminal Rules and statutes

> provide for the direct review of criminal judgments through appeal, and collateral attacks through postconviction petitions, habeas corpus, and motions to vacate. A declaratory-judgment action cannot be used as a substitute for any of these remedies.

(Citations omitted.) *Id.* at ¶ 44. The court then offered the following summary:

> [I]t is clear that the plaintiffs were not actually asking for disgorgement of funds wrongfully held as a result of an invalid policy promulgated by an administrative officer. Instead, they were asking the court to partially vacate final, unappealed judgments. Regardless of the character or severity of an error in a judgment entry, and regardless of whether that error renders the judgment void or voidable, the criminal appellate and postconviction review processes remain the sole avenues for redress. Declaratory judgment was therefore unavailable as a means of reviewing and vacating a portion of the costs imposed as part of Glick's sentence.

*Id.* at ¶ 45.

**{¶22}** After reaching this conclusion, the Supreme Court went on to clear up one aspect of the Eighth District's holding. In its decision reversing the judgment of the Cuyahoga County Court of Common Pleas, the Eighth District, treating Glick's action "as if it were a postconviction motion to vacate a void judgment,"

held that "'whether [a judgment is] void or voidable, the remedy lies in a direct appeal, not a collateral attack on the judgment in a different court.'" *Id.* at ¶ 46, quoting *Lingo v. State*, 8th Dist. Cuyahoga No. 97537, 2012-Ohio-2391, ¶ 18.

{¶23} The Supreme Court found that the Eighth District's "statement that void judgments are not open to collateral attack and that attacks on void judgments can be defeated by the doctrine of res judicata [was] mistaken." *Lingo*, 138 Ohio St.3d 427, 2014-Ohio-1052, at ¶ 46. The court recognized the well established principle that "[a] void judgment is a nullity and open to collateral attack at any time" and noted that "[a]ny court in any jurisdiction certainly has the right to decline to recognize the validity of a void judgment of any other court." *Id.*, citing *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, ¶ 40 and *Tari v. State*, 117 Ohio St. 481, 494 (1927). The court emphasized, however, that "whether a void judgment has come before a court through a proper vehicle and whether a court has the authority to provide the relief requested against the void judgment are different matters." *Id.*

As the court explained:

There are various scenarios in which a court might have jurisdiction over an issue that provides the court with the opportunity to declare the judgment of any other court to be void. For instance, in a proper case, a court may refuse to enforce the void judgment of another court

or prevent a party from executing upon the judgment. But a void judgment does not by itself create a justiciable controversy that a court may seize upon and resolve. To be subject to collateral attack, the judgment must be relevant to the relief sought or to the enforcement of some right in a controversy properly before the court. And the fact that a judgment might be void certainly does not give every court the authority to directly reverse, vacate, or modify that judgment.

(Citations omitted.) *Id.* at ¶ 47. Although "[a] court has the inherent authority to vacate its own void judgments," "the authority to vacate the void judgments of another court is exclusively conferred by the Ohio Constitution on courts of direct review." *Id.* at ¶ 48, citing *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus. The court concluded:

Because the common pleas court was not empowered either inherently or by Ohio's Constitution to provide the requested review and relief, the court lacked jurisdiction to proceed with the plaintiffs' case. In this context, the intent of the Eighth District's holding is better understood; whether an error in a criminal judgment entry causes a portion of the judgment to be void or voidable, the remedy lies in a direct or collateral attack before a court with the authority to vacate

the decision, not an attack on the judgment in a different court with no authority to vacate the decision.

*Id.* at ¶ 49.

{¶24} After reviewing Gilbert's claims and her requested relief in light of the Supreme Court's decision in *Lingo*, we conclude that the Hancock County Court of Common Pleas does not have jurisdiction to proceed with Gilbert's case. In *Lingo*, the Supreme Court concluded that the relief requested by Glick "was in substance a request to vacate a portion of a judgment of the Berea Municipal Court." *Lingo*, 138 Ohio St.3d 427, 2014-Ohio-1052, at ¶ 3. We believe that the same is true of the relief requested by Gilbert. Although Gilbert requests numerous forms of relief from the Hancock County Court of Common Pleas, she principally requests a declaration that the judgment of the Findlay Municipal Court is void and, following this declaration, an order directing the Midland parties to return the money she paid to them to satisfy the judgment. Gilbert's requested relief is akin to the relief requested by Glick in *Lingo*. *Id.* at ¶ 37. While Gilbert notes that she is asking the Hancock County Court of Common Pleas to simply recognize that the Findlay Municipal Court's judgment is void, rather than asking the court to vacate the judgment of the Findlay Municipal Court, this distinction does not make a difference in this case. In *Lingo*, Glick argued that the judgment of the Berea Municipal Court was partially void due to the erroneous assessment of costs, and there is no

indication that he expressly asked the court of common pleas to vacate the Berea Municipal Court's judgment. *See id.* at ¶ 17. Even without an explicit request for the vacation of the Berea Municipal Court's judgment or an order from the court of common pleas specifically vacating the municipal court's judgment, it was enough that the relief granted to Glick by the court of common pleas had the effect of vacating the municipal court's judgment.

{¶25} Furthermore, the court in *Lingo* held that Glick's declaratory judgment action was not a proper vehicle to review the validity of the Berea Municipal Court's judgment because "the criminal appellate and postconviction review processes," consisting of direct appeals, postconviction petitions, petitions for writs of habeas corpus, and motions to vacate, "remain[ed] the sole avenues" to review and vacate criminal sentences. *Id.* at ¶ 44-45. Likewise, there are limited means by which a final civil judgment can be reviewed and vacated. Of course, a party may seek review and vacation of a judgment by means of a direct appeal. In addition, a party may seek relief from judgment using one of the methods provided by the Rules of Civil Procedure. "[T]he Rules of Civil Procedure specifically limit relief from judgments to motions expressly provided for within the same Rules." *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380 (1981). "[T]he Civil Rules do allow for relief from final judgments by means of Civ.R. 50(B) (motion notwithstanding the verdict), Civ.R. 59 (motion for a new trial), and Civ.R. 60(B) (motion for relief

from judgment)." *Id.* Moreover, a party against whom a void judgment has been rendered can petition the court that issued the judgment to vacate the judgment. *See Lingo* at ¶ 48, citing *Patton* at paragraph four of the syllabus; 1970 Staff Note, Civ.R. 60. Although the Staff Notes to Civ.R. 60 provide that "[t]he vacation of a void judgment might be brought in the form of a motion or perhaps in the form of a procedural device such as a declaratory judgment action," given that this comment is offered in the context of explaining the operation of Civ.R. 60, it is best understood as suggesting that a void judgment might be vacated by bringing a declaratory judgment action in the court that entered the void judgment. Therefore, a declaratory judgment action in a court that did not issue an allegedly void judgment is "conspicuously absent" from the list of ways that a party can seek to have an allegedly void judgment reviewed and vacated. *See Pitts* at 380.

{¶26} Finally, though the court in *Lingo* acknowledged that a court might have jurisdiction to declare the judgment of another court to be void in a proper case, this is not such a case. As noted above, Gilbert argues that her action is a permissible collateral attack on the judgment of the Findlay Municipal Court. We disagree. In *Lingo*, the Supreme Court defined a collateral attack as "'an attempt to defeat the *operation* of a judgment, in a proceeding where some *new right* derived from or through the judgment is involved.'" (Emphasis sic.) *Lingo* at ¶ 47, quoting *Kingsborough v. Tousley*, 56 Ohio St. 450, 458 (1897). While Gilbert may have

been able to defeat the operation of the Findlay Municipal Court's judgment in a suit brought by the Midland parties that involved some new right derived from the judgment, e.g., the right to enforce the judgment, by arguing that the judgment is void, she has not demonstrated that her action is based on a right derived through the Findlay Municipal Court's judgment and whose success requires that the operation of the judgment be defeated. *See id.* Instead, Gilbert appears to latch on to the fact that the Findlay Municipal Court's judgment is allegedly void in an effort to invoke the jurisdiction of the Hancock County Court of Common Pleas and to have the judgment declared void. Yet, in *Lingo*, the Supreme Court stated clearly that this is impermissible. *Id.* ("[A] void judgment does not by itself create a justiciable controversy that a court may seize upon and resolve.").

{¶27} In conclusion, we hold that the Hancock County Court of Common Pleas does not have jurisdiction to entertain Gilbert's individual claims. Therefore, the Hancock County Court of Common Pleas is necessarily without jurisdiction to consider the claims of the classes of persons Gilbert seeks to represent.

The Midland parties' first assignment of error is sustained.

**Assignment of Error No. II**

**The trial court erred by determining plaintiff-appellee Gilbert had met her burden of satisfying the elements under Civ.R. 23 to certify a class.**

## Assignment of Error No. III

**The trial court erred by certifying a class on Gilbert's declaratory judgment claim through the "Collection Suit Defense" class.**

{¶28} Because we determined under the Midland parties' first assignment of error that the trial court does not have jurisdiction to proceed with Gilbert's case, the Midland parties' second and third assignments of error are rendered moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

{¶29} Having found error prejudicial to the appellants herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ZIMMERMAN, P.J., concurs.**

**SHAW, J., concurs in Judgment Only.**

**/jlr**